T. Connor O'Carroll (SBN 312920)
Email: cocarroll@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone: (415) 543 8700
Facsimile: (415) 391 8269

Amber S. Finch (SBN 222321)
Email: afinch@reedsmith.com
Katherine P. Goetz (SBN 346205)
Email: kgoetz@reedsmith.com
Caprecia Camper-Young (SBN 366342)
Email: ccamper-young@reedsmith.com
REED SMITH LLP
515 South Flower Street, Suite 4300
Los Angeles, CA 90071
Telephone: (213) 457 8000
Facsimile: (213) 457 8080

*Attorneys for Plaintiff*
Southern California Edison Company

# UNITED STATES DISTRICT COURT OF CALIFORNIA

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTHERN CALIFORNIA EDISON COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>STARR INDEMNITY AND LIABILITY COMPANY; and STARR SURPLUS LINES INSURANCE COMPANY,<br><br>Defendants. | Case No.:<br><br>**PLAINTIFF'S COMPLAINT FOR:**<br><br>**(1) DECLARATORY JUDGMENT**<br><br>**(2) BREACH OF CONTRACT (DUTY TO DEFEND); AND**<br><br>**(3) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff Southern California Edison Company ("SCE" or "Plaintiff"), by and through its attorneys, Reed Smith LLP, for its Complaint against Defendant Starr Indemnity and Liability Company and Defendant Starr Surplus Lines Insurance Company (collectively, "Starr" or "Defendants") alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

## NATURE OF THIS ACTION

1. Plaintiff SCE brings this action for declaratory judgment, breach of contract, and bad faith against Starr, SCE's insurance companies, because Starr has wrongfully and tortiously failed to honor its contractual and legal obligations to defend SCE in the civil action: *Harper, et al. v. Southern California Edison Company, et al.*, San Bernardino County Superior Court Case No. CIVSB2526977 (the "Underlying Action").

## THE PARTIES

2. Plaintiff Southern California Edison Company is, and at all times relevant hereto was, a utility provider that provides electrical services to members of the public in California, including those in Los Angeles and San Bernardino County. SCE is a subsidiary wholly owned by Edison International. SCE is a California corporation authorized to do, and is doing, business in California, with its headquarters in Rosemead, California.

3. Defendant Starr Indemnity and Liability Company is now, and at all relevant times was, a corporation existing under the laws of the State of Texas, with its principal place of business in New York, New York. Starr Indemnity and Liability Company is, and at all relevant times was, an insurance carrier eligible to do business as an insurer in the State of California.

4. Defendant Starr Surplus Lines Insurance Company is now, and at all relevant times was, a corporation existing under the laws of the State of Texas, with its

principal place of business in New York, New York. Plaintiff is informed and believes that Defendant conducts business in the State of California.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and because complete diversity exists between Plaintiff and Defendants.

6. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

**A. Rokstad contracted with SCE to perform certain work for SCE.**

7. In 2023, SCE and its contractor, Rokstad Power Inc. ("Rokstad"), entered into a Master Services Agreement ("MSA") whereby Rokstad agreed to perform certain services/work for SCE.

8. The MSA remained a valid and enforceable contract during all relevant time periods.

9. The MSA provides that SCE and Rokstad may enter into certain purchase orders or other contracts that will further define Rokstad's scope of work for SCE under the MSA.

10. Pursuant to the MSA and attendant contracts, on or around December 1, 2023, Rokstad performed certain maintenance work on a power line near the single-family home of Percy Harper and Debra Harper (collectively, "Harpers"), located at 24979 Tulip Avenue, in the City of Loma Linda, California (the "Subject Property").

**B. The MSA requires Rokstad to name SCE as an Additional Insured under Starr's policies.**

11. The MSA included an "Insurance" provision that required Rokstad to obtain certain primary and excess general liability insurance policies.

12. For example, the MSA's Insurance provision states, in relevant part:

11.1 <u>Required Insurance.</u> [Rokstad] shall, at its own expense, provide and maintain in effect those insurance policies as specified below, with limits of liability that meet or exceed the limits specified below and such additional coverage as may be required by Applicable Law, with insurance companies authorized to do business in the state in which the Services are to be performed, or the Deliverables provided, with an A.M. Best's Insurance Rating of not less than A-.

* * *

11.1(B) <u>Commercial General Liability Insurance,</u> written on an "occurrence," not claims-made, basis, covering all operations by or on behalf of Contractor [Rokstad] arising out of or connected with the Agreement, including coverage for bodily injury, property damage, personal and advertising injury, products/completed operations and contractual liability. Such insurance shall bear a per occurrence limit equal to or exceeding $2,000,000 and an annual aggregate limit equal to or exceeding $2,000,000, exclusive of defense costs, for all coverages. Such insurance shall contain standard cross-liability and severability of interest provisions.

13. Importantly, the MSA also required Rokstad to name SCE as an additional insured under such policies for liabilities arising, in whole or in part, from Rokstad's acts or omissions.

14. For example, the MSA at Section 11.2 states:

11.2 The insurance required above [in the MSA] and all insurance that is required to name [SCE], its subsidiaries and affiliates and their respective officers, directors, shareholders, agents and employees as additional insureds, including without limitation primary, excess and umbrella policies, shall apply as primary insurance to, and without a right of contribution from, any other insurance or self-insurance maintained by or

afforded to [SCE], its subsidiaries and Affiliates, and their respective officers, directors, shareholders, agents, and employees ("Edison's Insurance"), regardless of any conflicting provision in [Rokstad's] and any Subcontractor's policies to the contrary.

\* \* \*

All Commercial General Liability, Commercial Automobile Liability, Umbrella/Excess Liability and Cyber Insurance that is maintained by or behalf of [Rokstad] shall name [SCE], its subsidiaries and Affiliates, and their respective officers, directors, shareholders, agents and employees as additional insureds with coverage up to the full limits of liability provided for [Rokstad] for liability directly or indirectly arising out of or in any way involving, in whole or in part, the acts or omissions of [Rokstad], its employees, agents for any Subcontractor or [Rokstad's] products/Services, for both ongoing operations and completed operations.

15. Consistent with the foregoing MSA provisions, Rokstad procured certain insurance policies and presented SCE with certain "Certificates of Liability Insurance," which listed SCE as an additional insured under Rokstad's policies, including (1) Defendant Starr Indemnity and Liability Company's Commercial General Liability Policy No. 1000090337221 and (2) Defendant Starr Surplus Lines Insurance Company Commercial General Liability Policy No. 1000090747231 (collectively, the "Policies").

16. Copies of the Certificates of Liability Insurance are attached hereto as **Exhibits 1 and 2**, and are incorporated herein by reference.

**C.    The Policies provide coverage to SCE as an Additional Insured for property damage caused, in whole or in part, by Rokstad's acts or omissions.**

17. Pursuant to the MSA's "Insurance" provisions, and as evidenced by the "Certificates of Liability Insurance," SCE is an additional insured under the Policies.

18. Among other things, the Policies provide coverage to Rokstad and additional insureds, like SCE, for all sums the insureds become legally obligated to pay

as damages because of "property damage."

19. The Policies also include an "Additional Insured" endorsement that extends the foregoing coverages to any "person or organization" that Rokstad is "required to cover by written contract."

20. Among other things, the Additional Insured endorsements grant coverage to Additional Insureds, like SCE, for "property damage" that is "caused, in whole or in part," by "[Rokstad's] acts or omissions; or the acts or omissions of those acting on [Rokstad's] behalf."

21. Importantly, the Policies impose upon Starr "the right and duty to defend the insured [and additional insureds like SCE] against any 'suit' seeking [damages because of …or property damage]" that is potentially caused, in whole or in part, by Rokstad's "acts or omissions."

22. Notably, Starr's duty to defend potentially covered claims under the Policies is immediate and is <u>not</u> conditioned upon either Rokstad's or SCE's satisfaction of any self-insured retention.[1]

**D. The Underlying Action alleges property damage that was *potentially* caused, in whole or in part, by Rokstad's acts or omissions while performing work for SCE under the MSA.**

23. On or around December 1, 2023, the Harpers allegedly sustained property damage to the Subject Property when a crane operated by Rokstad allegedly tipped over.

24. Due to their alleged property damage, on September 17, 2025, the Harpers initiated the Underlying Action against SCE, Rokstad, and other defendants asserting claims sounding in negligence.

25. Notably, the Underlying Action alleges explicitly that Rokstad, "under contracted order by SCE," was conducting scheduled maintenance work on SCE owned

---

[1] California law is in accord that a primary insurance company's duty to defend under an insurance policy, like Starr's duties to defend at issue here, is independent of whether any self-insured retention has been satisfied unless there is clear policy language providing otherwise. *Legacy Vulcan Corp. v. Superior Court*, 185 Cal. App. 4th 677, 696-97 (2010).

and operated power lines near" the Subject Property on December 1, 2023.

26. The Underlying Action further alleges that Rokstad, "while performing maintenance and power line replacement" work "negligently positioned and operated its crane . . . causing it to tip over onto the Subject Property" and cause property damage.

27. A copy of the operative complaint from the Underlying Action is attached hereto as **Exhibit 3** and is incorporated herein by reference.

**E.   Starr has wrongfully refused to defend SCE in accordance with Starr's obligations under the Policies and applicable law.**

28. SCE investigated the allegations in the Underlying Action and determined that, on or around December 1, 2023, Rokstad performed work for SCE pursuant to the MSA in and around the area in Loma Linda, California where the Harpers' allegedly sustained property damage.

29. SCE further determined that Rokstad's acts or omissions while performing work for SCE under the MSA at or near 24979 Tulip Avenue, Loma Linda, California *potentially* caused, in whole or in part, the Harpers' property damage as alleged in the Underlying Action.

30. Accordingly, on November 12, 2025, SCE tendered, a claim for the Underlying Action to Starr as an additional insured of Rokstad under the Policies.

31. With its November 12, 2025 notice, SCE provided Starr a copy of (1) the Complaint from the Underlying Action; (2) Rokstad's Certificates of Liability Insurance confirming SCE's additional insured status; and (3) the MSA between SCE and Rokstad.

32. As its additional insured under the Policies, SCE requested Starr defend SCE in the Underlying Action immediately because the liability alleged against SCE in the Underlying Action was *potentially* caused, in whole or in part, by Rockstad's acts or omissions while performing work for SCE.

33. Importantly, SCE requested Starr respond to its additional insured claim by no later than December 5, 2025.

34. A copy of SCE's additional insured tender to Starr (without enclosures) is attached hereto as **Exhibit 4** and is incorporated herein by reference.

35. On November 14, 2025, Starr acknowledged receipt of SCE's additional insured claim and assigned Gallagher Bassett ("Gallagher") as Starr's representative to manage/handle/adjust SCE's additional insured claim on Starr's behalf.

36. On December 5, 2025, Starr failed to respond to the merits of SCE's additional insured claim. In fact, Starr never responded to SCE's additional insured claim, despite SCE *repeatedly* urging Starr to do so.

37. For example, on December 23, 24, and 29, 2025, SCE sent claim communications to Starr urging it to provide SCE an immediate defense in the Underlying Action and respond to its additional insured tender.

38. In its December 29, 2025 claim communication, SCE advised Starr that, given Starr's prolonged failure to respond, SCE had been compelled to retain Frost Brown Todd LLP ("Frost") as independent counsel to defend SCE in the Underlying Action, and that SCE would seek reimbursement from Starr for all associated fees/costs.

39. On January 15, 2026, SCE demanded again that Starr respond to SCE's additional insured tender and advised that Starr's failure to respond was negatively impacting SCE's defense of the Underlying Action.

40. On January 20 and 22 2026, SCE demanded yet again that Starr respond to SCE's additional insured claim.

41. On January 23, 2026, SCE demanded again that Starr respond to SCE's additional insured claim and advised Starr that its failure to respond was textbook bad faith claims handling.

42. On February 9, 2026, SCE demanded again that Starr respond to SCE's additional insured claim and advised Starr that SCE may settle the Underlying Action independently given Starr's refusal to respond and bad faith claims handling.

43. On February 27, 2026, SCE demanded again that Starr respond to SCE's additional insured claim and advised Starr that it was in breach of the Policies and

1. handling SCE's claim in bad faith.

44. On March 9, 2026, SCE demanded again that Starr respond to SCE's additional insured claim and advised that it may "consider Starr's failure to respond to SCE's claim as an outright denial and proceed accordingly, including settling the lawsuit and subsequently maintaining an action against Starr directly."[2]

45. In its March 9, 2026 communication, SCE further advised Starr that its "unreasonable delays" in "paying policy benefits to SCE, including defense fees, and failure to communicate with its additional insured, is bad faith and may give rise to extra contractual damages in tort."[3]

46. Notwithstanding all the foregoing claim communications, Starr continues to refuse to respond to SCE's additional insured claim or provide SCE a defense in the Underlying Action.

47. Starr's refusal to respond to the merits of SCE's additional insured claim and refusal to honor its duty to defend is contrary to the terms of the Policies and a violation of applicable law.

48. In sum, in the face of the indisputable information discussed herein supporting the *potential* for coverage for SCE as an additional insured under the Policies for the Underlying Action, Starr has wrongfully denied SCE its right to a defense under the Policies for the Underlying Action as an additional insured.

49. As a result of Starr's wrongful denial of its contractual obligation to defend SCE in the Underlying Action as its additional insured under the Policies, SCE has incurred, and will continue to incur, defense fees and costs defending the Underlying

---

[2] California law is in accord. *McCormick v. Sentinel Life Ins. Co.*, 153 Cal. App. 3d 1030, 1050 (1984) (holding that "a lengthy delay in resolving a claim for insurance benefits will have the identical consequence for the insured as an outright denial of benefits. An insurance company cannot insulate itself from liability simply because rather than denying benefits outright it keeps a claims file on the shelf for months or years without ever formally denying it"); *Flintkote Co. v. Gen. Accident Assurance Co.*, 480 F. Supp. 2d 1167, 1176 (N.D. Cal. 2007); *see also* Cal. Code Regs. tit. 10, § 2695.7; *City of Hollister v. Monterey Ins. Co.*, 165 Cal. App. 4th 455, 489 (2008) (holding that California's "regulations require the insurer to accept or deny any claim 'immediately'" and "'in no event more than forty (40) calendar days'").

[3] California law is in accord. *Intergulf Dev. LLC v. Superior Court*, 183 Cal. App. 4th 16, 20 (2010); Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713, 721 (2007).

Action.

50. All conditions imposed by the Policies, including the payment of premiums and notice of claims, have been satisfied, waived, or otherwise excused by the behavior of Starr or by operation of law, including by Starr breaching its Policies through its refusal to defend SCE in the Underlying Action as its additional insured.

51. Starr's refusal to honor its obligations to SCE under the Policies and applicable law has caused, and will continue to cause, SCE significant damage.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment)

52. The allegations set forth in all preceding paragraphs are hereby realleged and incorporated by reference.

53. The Policies constitute valid and enforceable contracts of insurance between SCE and Starr.

54. SCE has timely satisfied all obligations and complied with all conditions applicable under the Policies, including providing timely notice of its claim.

55. An actual and justiciable controversy presently exists between SCE and Starr regarding their respective rights and obligations under the Policies and applicable law for the Underlying Action.

56. Given that the parties have an actual and justiciable controversy regarding their respective rights and obligations under the Policies and applicable law for the Underlying Action, a declaratory judgment of the Parties' respective rights and obligations is necessary.

57. SCE therefore seeks a declaratory judgment in favor of SCE and against Starr that:

    a. Starr is obligated to defend SCE in the Underlying Action as an additional insured under the Policies;

    b. Starr is obligated to provide SCE with a conflict-free defense in the Underlying Action as its additional insured under the Policies and pursuant

to California Civil Code § 2860;

c. Starr breached the Policies by refusing to provide SCE a defense for the Underlying Action; and

d. SCE is entitled to any other declaratory relief that the Court deems just and proper.

## SECOND CLAIM FOR RELIEF

### (Breach of Contractual Duty to Defend)

58. The allegations set forth in all preceding paragraphs are hereby realleged and incorporated by reference.

59. SCE has performed all obligations under the Policies, and any and all conditions precedent to coverage under the Policies have been satisfied or waived.

60. As set forth above, the Policies impose upon Starr a duty to defend SCE against lawsuits that are potentially covered—*i.e.,* lawsuits that potentially implicate Rokstad's acts or omissions in allegedly causing liability.

61. The Underlying Action is a covered lawsuit seeking damages for property damage potentially caused, in whole or in part, by Rokstad's acts or omissions while Rokstad was performing work for SCE pursuant to the MSA.

62. Nevertheless, Starr breached the Policies by wrongfully failing and/or refusing to defend SCE in the Underlying Action as its additional insured under the Policies.

63. No exclusions, conditions, or other provisions in the Policies excuse Starr's non-performance.

64. SCE has not otherwise excused Starr's non-performance.

65. As a direct and proximate cause of Starr's breach, SCE has been damaged/denied the benefits of insurance coverage to which it is entitled as an additional insured under the Policies, including the provision of a conflict-free defense and payment of SCE's reasonable fees and costs incurred in defense of the Underlying Action.

66. SCE has suffered and continues to suffer damages as a direct and proximate result of Starr's breach of its obligations under the Policies in excess of the jurisdictional minimum of this Court, with the exact amount to be proven at trial. SCE reserves the right to conform its claim for damages consistent with proof at trial.

### THIRD CLAIM FOR RELIEF

**(Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing)**

67. The allegations set forth in all preceding paragraphs are hereby realleged and incorporated by reference.

68. The Policies contain an implied covenant of good faith and fair dealing that Starr will not do anything which will injure the right of an insured, including additional insureds like SCE, to receive the benefits of said Policies.

69. In its handling of SCE's additional insured claim arising from the Underlying Action, Starr has breached its duty of good faith and fair dealing owed to SCE under the Policies in the following respects, among others:

   a. Failing to properly investigate the facts related to the claims asserted against SCE in the Underlying Action, or to evaluate those facts properly to come to a reasonable and justifiable coverage determination;

   b. Deliberately neglecting to inquire fully into possible bases that might support coverage to SCE as an additional insured under the Policies for the Underlying Action;

   c. Ignoring relevant evidence available, as well as relevant case law, supporting SCE's request for a defense as an additional insured for the Underlying Action;

   d. Maliciously and oppressively seeking to rely on limiting language in the Policies that applies only when Starr has satisfied its contractual obligations, and not breached its obligations under the Policies with respect to SCE's claims for the Underlying Action;

   e. Deceptively or deliberately misrepresenting policy terms or law to avoid obligations to SCE under the Policies or applicable law for the

Underlying Action;

f. Asserting grounds to avoid its obligations to SCE that Starr knows are not supported by, and are contrary to, the terms of the Policies, the law, insurance industry custom and practices, and the facts;

g. Refusing to pay reasonable defense costs or to defend SCE in full in connection with the Underlying Action, for which SCE reasonably expected a defense;

h. Refusing to provide SCE a conflict-free defense in the Underlying Action without proper cause or justification;

i. Failing/refusing to respond to SCE's claim communications.

j. Unreasonably delaying/failing/refusing to respond to the merits of SCE's additional insured tender.

k. Engaging in a pattern and practice of misconstruing the Policies' provisions or California law to diminish its obligations to SCE for the Underlying Action; and

l. By giving greater consideration to Starr's own interests than Starr gave to SCE's interests.

70. Starr also breached the implied covenant of good faith and fair dealing by searching for ways to avoid/deny SCE's additional insured claim for the Underlying Action and avoid/deny SCE its rights to independent counsel to defend the Underlying Action pursuant to California Civil Code § 2860.

71. For example, SCE understands that Starr has accepted Rokstad's claim for the Underlying Action, and is providing Rokstad a defense under the Policies—but has failed to do the same for its other insured, SCE.

72. In other words, Starr has taken inconsistent positions under the Policies in an effort to deny SCE benefits that SCE is entitled to as an additional insured under the Policies and applicable law.

73. As a direct and proximate result of Starr's breach of the implied covenant

of good faith and fair dealing, SCE has suffered actual and consequential damages and out-of-pocket expenses in a total amount to be shown by proof at time of trial.

74. In breaching the implied covenant of good faith and fair dealing, Starr acted in a manner knowingly harmful to and/or in conscious disregard of the rights of SCE reflecting malice and/or oppression as defined in California Civil Code section 3294, with the intention of benefitting themselves financially and with the intention of causing, or recklessly disregarding the probability of causing, injury to SCE.

75. In so acting, Starr acted with a willful and conscious disregard of SCE's rights and the consequences of those actions on SCE, and with the deliberate intent to vex, injure, and annoy SCE so as to deprive it of its rights under Starr's Policies and advance its own pecuniary interests. Such conduct warrants the imposition of punitive and exemplary damages in an amount sufficient to punish Starr for such conduct.

76. Pursuant to the holding in *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985), SCE is entitled to recover any and all attorneys' fees that it reasonably incurs in its efforts to obtain policy benefits that have been wrongfully and in bad faith withheld by Starr, which are continuing to accrue.

## PRAYER FOR RELIEF

WHEREFORE, in consideration of the foregoing, SCE respectfully requests the entry of a judgment in its favor and against Starr on all claims in this Complaint, and prays for relief as follows:

1. That the Court enter judgment in favor of SCE on all Claims;

2. On the First Claim for Relief, for a declaration that Starr is obligated to defend SCE in the Underlying Action as an additional insured under the Policies and applicable law;

3. On the First Claim for Relief, for a declaration that Starr is obligated to provide SCE a conflict-free defense in the Underlying Action under the Policies and applicable law;

4. On the First Claim for Relief, for a declaration that Starr breached the Policies by refusing to defend SCE as its additional insured under the Policies in the Underlying Action;

5. On the Second Claim for Relief, for monetary damages for Starr's breach of contract in an amount to be determined at trial, but exceeding $75,000, including direct, special, and consequential damages, plus pre-judgment and post-judgment interest and all other fees and costs as permitted by law;

6. On the Third Claim for Relief, extra-contractual damages, including without limitation, compensatory damages flowing from Starr's bad faith refusal to honor its obligations under the Policies and at law, attorneys' fees incurred by SCE to pursue coverage in light of Starr's bad faith refusal to honor its obligations under the Policies and at law, pre-judgment interest, punitive damages, and such other relief as the Court deems appropriate;

7. On all Claims, an award of damages in SCE's favor in an amount to be determined at trial;

8. On all Claims, an award of SCE's reasonable attorneys' fees, pre-judgment and post-judgment interests, costs, and the expense of this action, as permitted by law;

9. On all Claims, for all such other and further relief as the Court may deem just and proper.

## JURY DEMAND

SCE hereby demands a trial by jury as to all issues so triable.

DATED: March 13, 2026

                REED SMITH LLP

                By: /s/ *T. Connor O'Carroll*
                   T. Connor O'Carroll
                   *Attorneys for Plaintiff*
                   Southern California Edison Company